UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE L. CHANNELL, | ) | |
| | ) | |
| Plaintiff, | ) | 21 C 3094 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In 2019, Michelle Channell filed claims for Supplemental Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits with the Social Security Administration, alleging disability beginning August 1, 2017. Doc. 8-1 at 175-176. The Commissioner denied Channell's claims, *id*. at 108-112, and denied reconsideration, *id*. at 124-131. Channell sought, *id.* at 132-133, and received, *id.* at 35-65, a hearing before an administrative law judge ("ALJ") pursuant to 20 C.F.R. §§ 404.929 and 416.1429. The ALJ denied Channell's claims, Doc. 8-1 at 14-34, and she sought review from the Social Security Appeals Council, *id*. at 172-174, which denied her request for review, *id*. at 5-10, making the ALJ's decision the final decision of the Commissioner. *See Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014).

Channell timely sought judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1. The parties cross-move for judgment. Docs. 12, 15. Channell's motion is granted, the Commissioner's motion is denied, and the case is remanded to the Commissioner for further proceedings.

1

**Background**

The following facts and procedural history are taken from the administrative record.

A.     **Channell's Medical Condition**

Channell was 51 years old on her alleged disability onset date, August 1, 2017.  Doc. 8-1 at 66.  She worked as an E.R. technician, medical record assembler, and telemetry technician until August 2017, when she changed jobs because of her health conditions.  *Id*. at 42-44, 200, 237.  She then worked as a home caregiver until February 2019, when she stopped working altogether.  *Id*. at 199-201.  Channell filed for SSDI and SSI, asserting several physical and mental conditions, including diabetes, right knee effusion, osteoarthritis, left hip replacement, carpal tunnel in both hands, back pain, and depression.  *Id*. at 66-67, 175-176.  She asserted that, due to these ailments, she must take hour-long rest periods three to four times per day, she needs assistance getting in and out of a car, and her joints become stiff after she sits for fifteen minutes.  *Id*. at 233.

Channell had a total hip replacement in her left hip in 2011 and later sought treatment for painful popping in her hip joint.  *Id*. at 437-438.  After falling on her right knee in 2017, she received several combination injections throughout 2018 and 2019 to combat osteoarthritis in that knee.  *Id*. at 352-353, 362.  Channell was diagnosed with anxiety and depression in October 2019.  *Id*. at 498.

Stephanie Rzepka, NP, has treated Channell every three months since March 2018.  *Id*. at 473.  On March 6, 2018, Rzepka's treatment notes reflected that Channell had a limping gait, used a cane, and exhibited edema and effusion in her right knee.  *Id*. at 300.  On December 14, 2018, Rzepka's notes showed normal physical exam findings, but also an assessment for "[p]rimary osteoarthritis involving multiple joints."  *Id*. at 294.  On July 15, 2019, Rzepka noted

2

that Channell has limited range of motion in her right knee and "palpable popping and crepitus" in her left hip joint. *Id*. at 505.

In January 2020, Rzepka reported that Channell, due to her depression and osteoarthritis, could sit and stand/walk less than two hours per workday and would need 15-30 minutes of unscheduled rest periods each day. *Id*. at 474. Rzepka added that Channell would have "good days" and "bad days" and would likely be absent more than four days per month. *Id*. at 475. Channell's therapist, Kevin Jesse, LCSW, reported in February 2020 that her depression, anxiety, and agoraphobia would cause her to be absent from work more than three times per month. *Id*. at 516-517.

In September 2019, after conducting an independent psychological examination, Dr. Jeffrey Karr diagnosed Channell with "depressive disorder" and "somatic symptom disorder." *Id*. at 434. In August 2019, after an independent medical examination, Dr. M.S. Patil reported that Channell had "[m]inimal right limping gait," could walk on her heels and toes "[w]ith some difficulty," could squat and arise "[w]ith moderate difficulty," and had "[f]ull range of motion of all joints" except for her lumbar flexion and knees. *Id*. at 426. Dr. Patil added that a 2018 MRI of Channell's right knee "revealed moderate to severe tricompartmental osteoarthritis with degenerative meniscus tear," but that "[t]here [wa]s no swelling, hyperemia, tenderness or deformity of any joint." *Id.* at 427.

In September 2019, Dr. James Madison, a state agency physician, reviewed Channell's medical records and concluded that she could stand or sit for up to six hours per workday and had no postural limitations, except that she could only occasionally kneel, crawl, or climb ladders, ropes, and scaffolds. *Id.* at 73. Dr. Madison based his conclusion on Channell's full range of motion in all joints and spine except her lumbar and right knee. *Ibid*. Dr. Sai

3

Nimmagadda, another state agency physician, reviewed Channell's medical records and, in a February 2020 report, reached conclusions similar to those of Dr. Madison with only slight differences regarding Channell's postural limitations. *Id.* at 100-102.

Channell testified at the administrative hearing before the ALJ that her right knee pain was a ten every day on a pain scale from zero to ten, that she could not be on her feet for half the day, and that she could not walk or sit longer than an hour. *Id*. at 47-49, 55.

B.  The Commissioner's Decision

A claimant is disabled for purposes of the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant has the burden of showing that her impairments prevent her from performing prior employment and any other job generally available in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

Following the administrative hearing, Doc. 8-1 at 35-65, the ALJ issued a decision finding that Channell was not disabled and therefore ineligible for SSDI or SSI. *Id*. at 17-34. The ALJ followed the five-step sequential evaluation process for determining whether an adult claimant is disabled. *See* 20 C.F.R. §§ 416.920(a)(4)(i)-(v). The five steps are as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to

4

> determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (internal quotation marks omitted). RFC "is defined as 'the most [the claimant] can still do despite [her] limitations.'" *Id*. at 569 n.2 (first alteration in original) (quoting 20 C.F.R. §§ 404.1545(a), 416.945(a)). "A finding of disability requires an affirmative answer at either step three or step five. The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At the fifth step, the Commissioner "must present evidence establishing that the claimant possesses the [RFC] to perform work that exists in a significant quantity in the national economy." *Weatherbee*, 649 F.3d at 569 (footnote omitted).

      The ALJ determined that Channell was not engaging in "substantial gainful activity" (step one); that her "osteoarthritis of the knee and hip on the right side[,] diabetes mellitus[,] and mood disorder" were "severe impairments" (step two); and that those impairments were not listed in or equal to a listing in 20 C.F.R. § 404, subpart P, app. 1 (step three). Doc. 8-1 at 19-22. At step four, the ALJ found that Channell had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the ALJ determined:

> [T]he claimant occasionally can climb ramps and stairs. The claimant cannot climb ladders, ropes, or scaffolds. The claimant occasionally can stoop and crouch. The claimant cannot kneel or crawl; however, she frequently can balance. The claimant can sustain only occasional exposure to cold, wetness, vibrations, and hazards. The claimant cannot perform pushing or pulling with her right lower extremity. The claimant would need to shift positions for one to two minutes every 30 minutes while on tasks from sitting to standing. The claimant can perform simple, routine, repetitive tasks. The claimant can understand simple, work-related directions. The claimant can deal with only occasional work changes.

Doc. 8-1 at 22. Based on this RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Channell] [could] perform" (step 5), thus rendering her not disabled. *Id*. at 29; *see* 20 C.F.R. §§ 404.1569, 416.969.

## Discussion

Section 405 of the Social Security Act authorizes judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g). The court reviews the Commissioner's legal determinations *de novo* and her factual findings deferentially, affirming those findings so long as they are supported by substantial evidence. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive … ."). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (internal quotation marks omitted). If the court finds that the Commissioner's decision is not supported by substantial evidence, "a remand for further proceedings is the appropriate remedy unless the evidence before the court compels an award of benefits." *Briscoe*, 425 F.3d at 355. The court "cannot uphold an administrative decision that fails to mention highly pertinent evidence," *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), or that "is based on legal error," *Collins v. Astrue*, 324 F. App'x 516, 519 (7th Cir. 2009).

In addition to satisfying these standards, the Commissioner's final decision must build an "accurate and logical bridge from the evidence to [the] conclusion so that … [the] reviewing court[] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (internal quotation marks omitted); *see also Briscoe*, 425 F.3d at 351 ("In addition to relying on

substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (holding that the Commissioner must "articulate at some minimal level her analysis of the evidence to permit an informed review") (internal quotation and alteration marks omitted). To build a logical bridge, the Commissioner must "sufficiently articulate h[er] assessment of the evidence to assure [the court] that [s]he considered the important evidence and to enable [the court] to trace the path of h[er] reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation and alteration marks omitted). The court "cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Channell challenges the Commissioner's decision on several grounds, arguing, among other things, that: (1) the ALJ's opinion did not provide a narrative discussion describing how the record evidence supported her RFC finding, Doc. 12 at 8-10; (2) the ALJ erred in not considering the combined effect of her impairments when assessing Channell's RFC, *id*. at 12-13; and (3) the ALJ erred in her assessment of Rzepka's opinion, *id*. at 3-6.

I.  **The RFC Determination**

    A.  **Narrative Discussion Requirement**

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. The failure to provide such a narrative discussion "is sufficient to warrant reversal of the ALJ's decision." *Briscoe*, 425 F.3d at 352.

The ALJ's opinion determined that Channell can sustain work so long as she is able "to shift positions for one to two minutes every 30 minutes while on task, from sitting to standing." Doc. 8-1 at 26. But the ALJ's opinion does not explain how this positional limitation would sufficiently accommodate for Channell's pain or how those particular durations (one to two minutes, thirty minutes) were calculated. *See Hickey v. Berryhill*, 2017 WL 5001417, at *4 (N.D. Ill. Nov. 2, 2017) (remanding where "the ALJ did not explain what support he relied on or how he arrived at the calculations for positional limitations he included in the RFC"). Although the ALJ's opinion recites the medical evidence from the record, it does not *describe* how the evidence supports the positional limitation.

Neither Dr. Patil nor the state agency opinions suggest that the positional limitation in the RFC is necessary to accommodate for Channell's impairments. Doc. 8-1 at 72-74, 86-88, 423-428. But Rzepka's opinion and Channell's testimony support a more limiting RFC. Rzepka opined that Channell could sit and stand less than two hours in a workday and would need 15-30 minutes of unscheduled rest periods. *Id*. at 474. Channell testified that she could not be on her feet for half of the day, *id*. at 55, and that she must take hour-long rest periods three to four times per day, *id*. at 233. Although the ALJ found that Rzepka's opinion was "not persuasive" and that Channell's testimony was "somewhat inconsistent[]," the ALJ did not explain whether—and, if so, to what extent—Rzepka's opinion and Channell's testimony were considered in forming the RFC. *Id*. at 23, 26. Without that explanation, the court is unable to "trace the path of [the ALJ's] reasoning," and the decision must be remanded for further consideration. *Hickman*, 187 F.3d at 689 (internal quotation marks omitted); *see also Jarnutowski v. Kijakazi*, __ F.4th __, 2022 WL 4126293, at *4 (7th Cir. Sept. 12, 2022) ("An ALJ's failure to comply with SSR 96-8p's requirements is a sufficient basis, by itself, for [the court] to reverse an ALJ's

8

decision."); *Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012) (remanding because "the [ALJ]'s opinion failed to build a bridge between the medical evidence … and the conclusion that she is able to work full time in a sedentary occupation provided that she can alternate sitting and standing").

Rather than point to supporting evidence for the positional limitation included in the RFC, the Commissioner offers two reasons the ALJ was not required in her opinion to explain the limitation. Doc. 16 at 21-22. First, the Commissioner argues that the fact that the ALJ's RFC was "'more limiting than' any reviewing physician posited … shows 'reasoned consideration given to the evidence [Channell] presented.'" Doc. 16 at 21 (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)). But *Burmester* addressed an ALJ's use of boilerplate, not an ALJ's compliance SSR 96-8p. Specifically, the claimant in *Burmester* argued that "the ALJ improperly relied on boilerplate" instead of explaining his credibility decision. *Burmester*, 920 F.3d at 510. The court disagreed, holding that the ALJ's opinion was supported by a "detailed recitation of the medical evidence" even though the opinion used boilerplate. *Ibid*. *Burmester* does not suggest that an ALJ is excused from SSR 96-8p's narrative discussion requirement if her RFC finding was more limiting than that of the state agency doctors. *Ibid*.

Second, the Commissioner contends that the ALJ was not required to explain the positional limitation in the RFC because Channell, as the claimant, had the "burden of proving work-related limitations." Doc. 16 at 22. True enough, Channell "bears the burden to prove she is disabled by producing medical evidence." *Gedatus v. Saul*, 994 F.3d 893, 904-05 (7th Cir. 2021) (noting that "[a] fundamental problem" with the claimant's argument that the ALJ violated the narrative discussion requirement was that "she offered no opinion from any doctor to set … limits[] greater than those the ALJ set"). But, as shown above, Channell has provided, in

9

addition to her own statements, medical evidence of greater limitations than those set by the ALJ—specifically, Rzepka's opinion. Doc. 8-1 at 473-475.

### B. Combined Effect of Channell's Impairments

The RFC determination in the ALJ's opinion also falls short in not sufficiently "consider[ing] the interaction of [Channell]'s many physical and mental problems." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011); *see also Parker*, 597 F.3d at 923. The opinion's engagement with the potential cumulative effect of Channell's impairments was perfunctory. The opinion states that the ALJ "considered the claimant's allegations of hip and knee pain, along with her diabetes and mood disorder." Doc. 8-1 at 26. Nonetheless, the opinion does not engage in a reviewable analysis of whether Channell's impairments, when considered together, sum to total disability.

The ALJ's opinion recognized that Channell's osteoarthritis, diabetes mellitus, and mood disorder were severe impairments. *Id.* at 20. Rzepka and Jesse opined that the combination of Channell's impairments would require her to miss more than three days of work per month, among other limitations. *Id.* at 475, 517. The ALJ found those opinions "not persuasive" and the March 2020 state agency opinion "more persuasive," despite acknowledging that the state agency opinion "did not address the claimant's mood disorder." *Id.* at 26-28. In making those findings, the ALJ did not explain what weight, if any, was given to Channell's evidence of limitations arising out of her mood disorder in conjunction with her other impairments. *See Mandrell v. Kijakazi*, 25 F.4th 514, 519 (7th Cir. 2022) (observing that it was "troublesome" that "the ALJ[] fail[ed] to reconcile his own apparently contradictory" Step 3 finding that "the claimant ha[d] a severe mental impairment" with the RFC); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (finding no logical bridge "between the ALJ's recitation of the mental

10

medical evidence and the" RFC finding, where the ALJ recited much of the evidence "without a determination of weight").

Because the ALJ's opinion does not adequately explain whether the combined effect of Channell's impairments aligns with the RFC determination, as the regulations required it to do, *see* 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process."), remand is warranted. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of Golembiewski's impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe. On remand the agency must remember that a competent evaluation of Golembiewski's application depends on the total effect of all his medical problems.") (citations omitted).

## II.    Rzepka's Medical Opinion

Channell also argues that the ALJ's conclusion that Rzepka's treatment notes reflected "normal" examinations was "based upon an incorrect, or at minimum improperly selective, reading of the record." Doc. 12 at 4-6 (citing Doc. 8-1 at 26). Although it is not necessary to reach this argument, for purposes of remand the court will address it.

"An ALJ cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotation marks omitted); *see also Gerstner v. Berryhill*, 879 F.3d 257,

11

261 (7th Cir. 2018) (holding that the ALJ erred in "fixat[ing] on select portions of Dr. Callaghan's treatment notes and inadequately analyz[ing] his opinions"). The record does not support the ALJ's conclusion that Rzepka's treatment notes are inconsistent with her opinion. The ALJ cited treatment notes from two of Rzepka's examinations—on March 6, 2018 and December 14, 2018—that "reflect[ed] normal examination." Doc. 8-1 at 26-27 (citing Doc. 8-1 at 296, 301). The treatment notes from the March examination state that Channell had a limping gait, used a cane, and exhibited edema and effusion in her right knee. *Id*. at 300. Although the December examination notes report normal findings, they repeat Rzepka's prior assessment of "[p]rimary osteoarthritis involving multiple joints." *Id*. at 294; *see Gerstner*, 879 F.3d at 262 ("These unchanged diagnoses … belie the conclusion that [the claimant]'s … health had improved."). Moreover, the ALJ's opinion does not account for Rzepka's treatment notes from four other examinations, which report abnormalities in line with Rzepka's opinion, including knee edema, positive straight leg bilaterally, limited range of motion, palpable crepitus in the hip joint, use of a cane, and depression and anxiety. Doc. 8-1 at 334, 487, 493-494, 505.

The Commissioner cites *Gedatus* for the proposition that "the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." Doc. 16 at 19 (quoting *Gedatus*, 994 F.3d at 903). In *Gedatus*, however, the Seventh Circuit observed that the ALJ analyzed the relevant evidence. *See Gedatus*, 994 F.3d at 901 ("This is not a case where an ALJ ignored evidence contrary to his conclusion."). Here, because the ALJ pointed to only two of Rzepka's examination notes, Doc. 8-1 at 26-27, and overlooked the rest, the ALJ did not analyze all the relevant evidence necessary to build a logical bridge to the conclusion that Rzepka's opinion was unsupported by her medical notes. On remand, the ALJ should reconsider Rzepka's opinion in light of all the evidence in the record. *See Myles v.*

12

*Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (where the ALJ's opinion set forth a "selective discussion of the evidence," holding that "[o]n remand, the ALJ should consider all of the evidence in the record"); *Campbell v. Kijakazi*, 2022 WL 2449752, at *4-5 (N.D. Ind. July 6, 2022) (remanding where the ALJ's evaluation of a treating physician's opinion "cherry-pick[ed] the record" and did not explain how "countervailing evidence factored into the consistency and supportability analysis").

This conclusion is not altered by the fact that the Commissioner's brief in this court highlights certain normal findings set forth in Rzepka's treatment notes. Doc. 16 at 18. Because the analysis set forth in the brief does not "appear in the ALJ's opinion, … [it] cannot be used here." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)); *see also Parker*, 597 F.3d at 922.

Finally, the Commissioner argues that the ALJ's opinion acknowledged Rzepka's March 2018, March 2019, and January 2020 abnormal examination findings. Doc. 16 at 19 (citing Doc. 8-1 at 24-25). But the ALJ's summary of the treatment notes reflecting abnormal examinations, without analyzing any inconsistencies, does not sufficiently explain the opinion's conclusion that Rzepka's opinion was unpersuasive. *See Zurawski*, 245 F.3d at 887 ("Unfortunately, we are left to ponder what exactly are these 'inconsistencies' because the ALJ provided no further explanation."); *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("[T]he act of summarizing the evidence is not the equivalent of providing an analysis of the evidence.").

## Conclusion

Channell's motion for judgment is granted, the Commissioner's motion for judgment is denied, and this case is remanded to the Commissioner for further proceedings consistent with

this opinion. Given the grounds articulated for this disposition, it is unnecessary to address whether Channell's other arguments support the same result. *See Hudson v. Astrue*, 2009 WL 2612528, at *14 n.6 (N.D. Ill. Aug. 24, 2009) ("In light of this remand order [to reassess an RFC determination], we find it unnecessary to address the other arguments that plaintiff has raised. On remand, the ALJ will be free to re-examine and reassess those points, including … h[er] credibility decisions in determining plaintiff's RFC.").

September 22, 2022

_____
United States District Judge